FILED

Dec 08 2017, 10:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |
|---|---|
| J.R., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | December 8, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1704-JV-754 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> Trial Court Cause No. <br> 49D09-1701-JD-70 |

**Baker, Judge.**

[1] The juvenile court entered true findings that J.R. was delinquent for committing acts that would be dangerous possession of a firearm[1] and carrying a handgun without a license,[2] had they been committed by an adult. J.R. appeals, arguing that the police, when conducting a pat-down search, violated his rights under the United States and Indiana Constitutions to be free from unreasonable searches and that the dual adjudications violate double jeopardy principles. Finding that the pat-down search did not violate his rights, but that the adjudication for carrying a handgun without a license must be vacated, we affirm the adjudication for dangerous possession of a firearm, vacate the adjudication for carrying a handgun without a license, and remand with instructions.

## Facts[3]

[2] At approximately 8:30 p.m. on January 10, 2017, a police dispatch advised that "three black males" wearing "dark clothing" were "trying to open vehicles and take items out of cars" in a Family Dollar parking lot on the east side of Indianapolis. Tr. p. 8-9. When Indianapolis Metropolitan Police Officer Richard Christian responded to the scene, he saw three Black males, two of whom were trying to enter a vehicle while the third was standing behind it. No

---

[1] Ind. Code § 35-47-10-5(a)

[2] I.C. § 35-47-2-1(a).

[3] We heard oral argument on November 9, 2017, at Ivy Tech Community College in Columbus. We thank the school's administration, faculty, and students for their hospitality. We also thank counsel for their excellent written and oral advocacy.

one else was at the scene. After Officer Christian shined his light on them, the three males fled the area. The officer described one of the men as wearing "dark clothing" and another one as "sorta tall, maybe five-ten . . . with a black jacket and a white stripe." *Id.* at 9.

[3] Meanwhile, Indianapolis Metropolitan Police Officer Nicholas Snow, who had been on the force for only a few months, and Field Training Officer Mark Klonne were patrolling a nearby area. After hearing the dispatch regarding the fleeing suspects, they went to help set up a perimeter. Approximately five minutes later, Officer Snow exited his vehicle and stopped sixteen-year-old J.R. and another young man as they walked down a street in Indianapolis because they matched the description of two of the suspects. Both J.R. and the other man were wearing black; J.R. had "white Adidas stripes down his sleeve." *Id.* at 21. J.R. told Officer Snow that "I'm not f**king talking to you" and walked away. *Id.* at 27. Officer Snow tried to catch up, but J.R. began walking faster and disregarded another order to stop. At that point, Officer Snow grabbed J.R. and placed him in handcuffs.

[4] Officer Snow decided to conduct a pat-down search of J.R. because the officer "was in danger of losing eyesight of Officer Klonne," who was with the other young man. *Id.* at 33. Officer Snow patted down J.R.'s waist and the area behind his back where his hands were cuffed. The officer did not find anything during his search, and he walked J.R. back to the patrol car.

[5] When they were back at the patrol car, Officer Snow asked J.R. questions to ascertain his identity and why he had refused to stop. Officer Snow observed that J.R. was "moving his legs in such a manner" and turning as if he was "trying to adjust something," even after being asked to stop moving. *Id.* at 34. Officer Snow conducted a second pat-down that included a "pant sweep . . . up the left leg all the way to the groin." *Id.* at 39. Officer Snow felt a hard, cylindrical object that he believed to be a gun, which he seized. He stated that he found the gun "tracking the left side of his pants up underneath his groin . . . concealed in-between . . . really his hip joint and, . . . where his scrotum would be. It was tucked that far up into his body." *Id.* at 43.

[6] On January 13, 2017, the State filed a petition alleging that J.R. had committed dangerous possession of a firearm and carrying a handgun without a license, both Class A misdemeanors if committed by an adult. A factfinding hearing took place on February 9, 2017, after which the juvenile court entered true findings on both allegations. On March 14, 2017, a dispositional hearing took place, and the juvenile court placed J.R. on probation with a suspended commitment to the Department of Correction. J.R. now appeals.

## Discussion and Decision

## I. Search and Seizure

[7] J.R. argues that because there was no reasonable suspicion that he was armed, his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution were violated when the police

conducted a pat-down search, and as a result, the handgun seized from that pat-down search should not have been admitted into evidence.

## A. Fourth Amendment

[8] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches or seizures shall not be violated." A police officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* In determining whether the officer acted reasonably, weight is given "not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

[9] Here, the circumstances supported Officer Snow's belief that his safety or that of others was in danger when he conducted the second pat-down search.[4] J.R. engaged in activities that drew attention to himself. He was hostile toward

---

[4] Although J.R. briefly discusses the initial pat-down search, we note that because Officer Snow did not discover anything during that first search, J.R. could not receive relief or any remedy stemming from it. Therefore, we focus our analysis on the second pat-down search.

Officer Snow, telling him that "I'm not f**king talking to you." Tr. p. 27. He did not cooperate with Officer Snow, walking away despite an order to stop, and then, after another order to stop, increasing his speed. Even after J.R. was placed in handcuffs, he continued to engage in actions that drew attention to his body. Officer Snow observed that J.R. was "moving his legs in such a manner" and turning as if he was "trying to adjust something" even after being told to stop moving. *Id.* at 34. These actions gave Officer Snow a particularized and objective basis for suspecting that J.R. was concealing something on his person and justified the officer's second pat-down search. In short, the second pat-down search did not violate J.R.'s rights under the Fourth Amendment.

# B. Article 1, Section 11

[10] Article 1, Section 11 of the Indiana Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." Indiana's search and seizure clause is interpreted and applied independently of the Fourth Amendment. *Baniaga v. State*, 891 N.E.2d 615, 618 (Ind. Ct. App. 2008). Under the Indiana Constitution, the legality of a search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). We will consider the following factors in assessing reasonableness: 1) the degree of concern, suspicion, or knowledge that a violation has occurred; 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and 3) the extent of law enforcement needs. *Id.* at 361. The State

bears the burden to show that its intrusion was reasonable under the totality of the circumstances. *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind. 2002).

[11] The second pat-down search of J.R. was reasonable under the totality of the circumstances. First, Officer Snow had a significant degree of suspicion that a violation had occurred. J.R. matched the description the officer heard on the dispatch; he refused to comply with the officer's commands to stop; he was hostile toward the officer; and even after being placed in handcuffs, he moved his body in ways that drew attention to his legs. Second, the pat-down search did not involve a degree of intrusion greater than in an ordinary pat-down search. Indeed, the second pat-down search was conducted on the outside of J.R.'s pants, and there is no evidence that Officer Snow had to manipulate J.R.'s genitalia to find the gun. Finally, the extent of law enforcement needs was great—Officer Snow needed to be able to conduct his investigation in safety. Under the totality of these circumstances, the second pat-down search did not violate J.R.'s rights under the Indiana Constitution.

[12] In sum, the second pat-down search did not violate J.R.'s rights under the United States or Indiana Constitutions, and the juvenile court did not err in admitting the seized gun into evidence.

## II. The Adjudications

[13] J.R. next contends that his adjudications for dangerous possession of a firearm and for carrying a handgun without a license violate double jeopardy principles under both the double jeopardy clause of the Indiana Constitution and common

law protections. The State alleged and proved that J.R. possessed only one handgun, and that same gun supported both adjudications. The State concedes on this issue, and the parties agree that the adjudication for carrying a handgun without a license should be vacated.

[14] We agree that the adjudication for carrying a handgun without a license should be vacated, but for different reasons. Indiana Code section 35-47-2-1(a) states in relevant part that "a person shall not carry a handgun in any vehicle or on or about the person's body without being licensed under this chapter to carry a handgun." Under that same chapter, Indiana Code section 35-47-2-3(g)(3) states that "[a] license to carry a handgun shall not be issued to any person who . . . is under eighteen (18) years of age . . . ."

[15] With respect to minors, Indiana Code section 35-47-10-5(a) states that "[a] *child* who knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in section 1 of this chapter commits dangerous possession of a firearm . . . ." (Emphasis added.) Within that chapter, Indiana Code section 35-47-10-3 defines "child" as "a person who is less than eighteen (18) years of age."

[16] In other words, Indiana Code section 35-47-2-1 applies only to adults who possess handguns without a license, and as a matter of law, a person under the age of eighteen is not eligible for such a handgun license. Instead, a person under the age of eighteen, such as J.R., who possesses a handgun for any unauthorized reason commits, and only commits, dangerous possession of a

firearm. As a result, a double jeopardy violation cannot exist in the circumstances presented here because Indiana Code section 35-47-2-1, which governs the offense of carrying a handgun without a license, applies only to adults, and Indiana Code section 35-47-10-5, which governs the offense of a child in dangerous possession of a firearm, applies only to minors. The statutes, therefore, cannot be simultaneously violated. And because a minor cannot be adjudicated delinquent under Indiana Code section 35-47-2-1, J.R.'s conviction for carrying a handgun without a license must be vacated. We remand to the juvenile court with instructions to vacate J.R.'s adjudication for carrying a handgun without a license and resentence if needed.

[17] The judgment of the juvenile court is affirmed in part, reversed in part, and remanded with instructions.

Najam, J., and Altice, J., concur.