

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Anthony S. Churchward, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela Sanchez
Assistant Section Chief

Caryn N. Szyper
Evan M. Comer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sidney A. Berry,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 4, 2019

Court of Appeals Case No.
18A-CR-1769

Appeal from the Allen Superior
Court

The Honorable Wendy W. Davis,
Judge

Trial Court Cause No.
02D04-1604-F4-29

**Mathias, Judge.**

[1] This matter presents on interlocutory appeal from the Allen Superior Court's denial of Berry's motion to suppress evidence he argues was obtained through an unlawful and unreasonable search and seizure.[1]

[2] We affirm.

## Facts and Procedural History

[3] Around 9:30 p.m. on March 29, 2016, Detective Marc Deshaies of the Fort Wayne Police Department ("FWPD") was patrolling a high-crime residential area on the southeast side of Fort Wayne in an unmarked police vehicle. He was accompanied by Sergeant Hensler, also with the FWPD. It was dark outside, and as Detective Deshaies turned the corner, he observed a group of three males in the street near an unoccupied vehicle emitting loud music and parked close to the corner. The presence of the men in the street obstructed him from "turning the corner and easily continuing on." Tr. p. 10. He did not observe any other traffic that was being obstructed, nor had he received any complaints or prior information regarding these men in the street.

[4] Detective Deshaies had to stop his car because of the position of the men, and the men all backed up toward the car near which they had congregated. Each of the men was holding a beer bottle and appeared to be drinking. Detective Deshaies, along with Sergeant Hensler, wearing their FWPD uniforms,

---

[1] We held oral argument on this matter on March 13, 2019 at Cathedral High School. We thank Cathedral High School for hosting us and counsel for their excellent advocacy.

stopped, exited their vehicle, and began to walk toward the group of men congregated around the vehicle. Detective Deshaies testified that when they exited the police vehicle, "it was decided that we were just going to simply exit the car, contact them, maybe speak to them about standing in the middle of the street or the violations of loud music or public intoxication for drinking in public." Tr. pp. 9–10.

[5] Detective Deshaies testified that he did not display his weapon or speak in a tone that would mandate compliance. As they approached the group of men, Berry looked at Detective Deshaies, appeared to take "great notice" of their presence, began to back up, dropped his beer bottle on the ground, and looked around to the left and then to the right and back at the officers. Tr. pp. 11–12. Berry moved his hands down toward his waist and then placed his hands in his pockets. Detective Deshaies testified this behavior led him to believe that Berry was "most likely preparing to flee." Tr. p. 12. Detective Deshaies also observed a large bulge at the front left side of Berry's waist. The Detective understood this to be a location where individuals commonly carry firearms, and he testified that, at the time, he believed the large bulge on the waist line to be "the outline of a handgun handle in his waistline." Tr. p. 27. As Detective Deshaies did not observe significant behavior from the other two men, he decided to engage Berry first.

[6] As Detective Deshaies approached Berry, Berry stared at him and "continued to back up." Tr. p. 13. Once he came within a few feet of Berry, the Detective was able to detect the smell of marijuana. Detective Deshaies asked Berry if he

had a weapon, and Berry responded that he did not. The detective then told Berry that he was concerned for his safety and informed Berry that he was going to conduct a pat-down search for weapons. Berry complied, placing his hands on his head, and the Detective began conducting a pat-down search of Berry's clothing. Detective Deshaies did not begin his search with the bulge at Berry's waistline, but rather, he began the standard pat-down search, on the right side of his body. As he went over Berry's pocket, from his training and experience, he recognized a bag of marijuana. He indicated to Berry that he was not worried about marijuana. As he completed the pat-down, the Detective also discovered that the bulge he had observed on Berry's waistline was an iPhone Plus inside a leather cell phone case that had been clipped to Berry's belt. This phone had been concealed under Berry's clothing.

[7] Because of the smell of marijuana and because he knew there was marijuana in Berry's pocket, Detective Deshaies placed handcuffs on Berry. After handcuffing Berry, the Detective removed two bags from Berry's pocket. One bag contained solely marijuana, and the other contained marijuana, crack cocaine, and powder cocaine.

[8] Berry was charged with Level 4 felony possession of cocaine or narcotic drug and a Class B misdemeanor possession of marijuana. Berry moved to suppress the drug evidence discovered during his arrest, and on July 9, 2018, the trial court held a hearing. Detective Deshaies served as the sole witness. After the hearing, the trial court denied Berry's motion to suppress. Berry then filed, and

we granted, this interlocutory appeal asking for review of the trial court's decision not to suppress the evidence of the drugs obtained from his person.

# Discussion and Decision

## I. Standard of Review

A review of a denial of a motion to suppress must examine whether substantial evidence of probative value exists to support the trial court's denial of the motion. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind. 1997). To deter violations of the Fourth Amendment's protections against unreasonable searches and seizures, evidence obtained in violation of the Fourth Amendment generally is not admissible in a prosecution of the citizen whose right was violated. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013). The State has the burden of demonstrating the admissibility of the evidence collected during a seizure or search. *Id.*

The reviewing court must examine not only the evidence favorable to the trial court's judgment but also the uncontested evidence favorable to the defendant. *Johnson v. State*, 829 N.E.2d 44, 47 (Ind. Ct. App. 2005), *trans. denied*. No evidence shall be reweighed upon review, and all conflicting evidence will be considered most favorable to the trial court's ruling. *Marlowe v. State*, 786 N.E.2d 751, 753 (Ind. Ct. App. 2003). The trial court's ruling shall be affirmed if it is supported by substantial evidence of probative value. *Willingham v. State*, 794 N.E.2d 1110, 1113 (Ind. Ct. App. 2003); *Scott v. State*, 883 N.E.2d 147, 152 (Ind. Ct. App. 2008). However, the ultimate determination of reasonable

suspicion to support an investigative stop is reviewed de novo. *Guilmette v. State*, 14 N.E.3d 38, 40–41 (Ind. 2014).

## II. Fourth Amendment to the U.S. Constitution

[11] The Fourth Amendment to the United States Constitution provides the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. However, officers are allowed to conduct seizures in the presence of reasonable suspicion to pat-down clothing of individuals for possible weapons. *Bell v. State*, 81 N.E.3d 233, 239 (Ind. Ct. App. 2017), *trans. denied*. Upon review, courts "cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest." *Terry v. Ohio*, 392 U.S. 1, 24 (1968). This narrowly drawn authority "permit[s] a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.* at 27. The officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

[12] The search, however, must be confined "strictly to what [is] minimally necessary to learn whether [an individual is] armed and to disarm them" once a weapon or weapons are discovered. *Id.* at 30. "A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be

strictly circumscribed by the exigencies which justify its initiation." *Id.* at 25–26 (citing *Warden v. Hayden*, 387 U.S. 294, 310 (1967)). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. "[S]imple 'good faith on the part of the arresting officer is not enough.'" *Id.* at 22.

[13] Here, many factors formed Detective Deshaies's objectively reasonable basis to believe that Berry may have been armed and potentially posed a threat to officer or public safety. Initially, Berry demonstrated concerning behavior as he was approached by uniformed police. He dropped his beer bottle, backed away, looked side to side, reached his hands down toward his waist, and placed his hands in his pockets. Significantly, the other two men present did not exhibit these behaviors. The fact that the men were congregating in the middle of the street after dark in a high-crime area known for gun violence, murder, and drug activity is also a legitimate factor in the formation of Detective Deshaies's objectively reasonable basis. Additionally, Detective Deshaies observed a large bulge that appeared as if it could be the outline of a gun handle at the front left side of Berry's waist. We determine that all of these factors, taken together, appropriately formed an objectively reasonable basis for Detective Deshaies to perform the pat-down in accordance with the Fourth Amendment.

### III. Article 1, Section 11 of the Indiana Constitution

Berry also challenges the denial of his motion to suppress under Article 1, Section 11 of the Indiana Constitution. Article 1, Section 11 of the Indiana Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

When analyzing Article 1, Section 11 of the Indiana Constitution, "[i]nstead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer and employ a totality-of-the-circumstances test to evaluate the reasonableness of the officer's actions." *Duran v.* State, 930 N.E.2d 10, 17 (Ind. 2010) (internal citations omitted). *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005) establishes the test for the reasonableness of a search or seizure pursuant to Article 1, Section 11 of the Indiana Constitution. The *Litchfield* test balances: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. It is the State's burden to show its intrusion was reasonable. *State v. Bulington,* 802 N.E.2d 435, 438 (Ind. 2004).

*A. Degree of Suspicion*

In evaluating the degree of suspicion, courts consider "the reasonableness of the officers' assumptions, suspicions, or beliefs based on the information available to them at the time." *Duran v State*, 930 N.E.2d at 18.

The State argues that the Detective's concern was "high enough" to warrant the decision to check for weapons due to Berry's "fight or flight" behavior, looking around nervously, and dropping his hands to his pockets, the unidentified bulge at Berry's waistline, and the other factors argued in conjunction with the federal analysis such as his presence in a high-crime area. Although Berry argues that he was compliant with the pat-down, followed the detective's directions to place his hands on his head, and did not become angry or use profanity, these arguments do not address the factors the State identifies as contributing to the reasonableness of the suspicions that led Detective Deshaies to perform the pat-down.

*B. Degree of Intrusion*

The degree of intrusion is evaluated from the defendant's point of view. *Duran*, 930 N.E.2d at 18. An "ordinary" pat-down of the outside of a suspect's clothing is a fairly limited intrusion for the purposes of the Indiana Constitution. *J.R. v. State*, 89 N.E.3d 408, 412 (Ind. Ct. App. 2017), *trans. granted, summarily aff'd in relevant part,* 100 N.E.3d 256 (Ind. 2018). We have also previously held that police are not required to wait until an individual appears to be reaching for a

weapon in order to ensure his safety and the safety of the others at the scene. *Wilson v State*, 745 N.E.2d 789, 792 (Ind. 2001).

[19] Here, Detective Deshaies testified that he performed the pat-down in the same manner he performs all pat-downs. He also testified that, in his training and experience, "weapons can obviously be secretive in several big areas, ankle holsters, waistlines, pockets, shoulder holsters[.]" Tr. p. 13. He also testified that pat-downs should be conducted in the same manner —or in a very clear pattern —so they do not miss any area. Tr. p. 13. There is nothing in the record that persuades us that the pat-down at issue was anything other than an ordinary pat-down, and the intrusion here was minimal.

### C. Extent of Law Enforcement Needs

[20] Berry argues that the extent of the law enforcement needs in these circumstances was low, largely because there were two officers present. However, the State points out that, although there were two officers present, and although Berry was the only individual exhibiting unusual behavior prior to his pat-down, there were two other men with him. Detective Deshaies testified that, while he was engaging Berry, Sergeant Hensler was "[d]ealing with the other two males." Tr. p. 14.

[21] Weighing the degree of suspicion, the degree of intrusion, and the law enforcement needs, we cannot say that the pat-down conducted in this matter violated Article 1, Section 11 of the Indiana Constitution.

# Conclusion

[22] Detective Deshaies had sufficient basis under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution to perform a safety pat-down of Berry. Accordingly, we uphold the trial court's denial of Berry's motion to suppress.

[23] Affirmed.

Vaidik, C.J., and Kirsch, J., concur.