

FILED

Aug 03 2023, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Denise L. Turner
DTurner Legal LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Demarcus Nance,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 3, 2023

Court of Appeals Case No.
22A-CR-2581

Interlocutory Appeal from the
Marion Superior Court

The Honorable Shatrese M.
Flowers, Judge

Trial Court Cause No.
49D28-2009-F2-29100

**Opinion by Judge Weissmann**
Judges Bailey and Brown concur.

**Weissmann, Judge.**

[1] After several law enforcement officers tracked a marijuana odor to Demarcus Nance's home, the officers pulled Nance across the threshold of his home, forcibly detained him outside, and then entered his home without a warrant. Once inside, the officers observed drug paraphernalia and a gun in plain view. Only then did they seek a warrant, relying on evidence they had collected through the warrantless entry.

[2] Nance was charged with dealing in methamphetamine based on the drug evidence seized from his home. He moved to suppress that evidence, alleging that the officers overstepped federal and state constitutional boundaries. We reverse the trial court's denial of Nance's motion to suppress, finding that the officers had no authority to cross the threshold of Nance's home without a warrant and that the later searches with a warrant were tainted by the earlier illegal entries.

## Facts

[3] While assisting Marion County Community Corrections officers at the home of Nance's next-door neighbor, Indiana Gun Task Force members Gregory Kessie and Sergio De Leon detected the smell of raw and burnt marijuana emanating from the area of Nance's home. After Sergeant Kessie confirmed that some of the other four to six officers present also smelled marijuana, one of the officers ran a license check on the car parked in front of Nance's home. The license

plate did not match the vehicle and was not registered to either Nance or his neighbor.

[4] Sergeant Kessie and Detective De Leon decided to conduct a "knock and talk" at Nance's home. The smell of marijuana strengthened as they approached Nance's home. Detective De Leon knocked on the front door, which consisted of a glass storm door and main door behind that. Nance opened the main door and then "cracked" open the storm door with his forearm to speak to the officers. Tr. Vol. II, p. 70. At that time, the raw marijuana smell from within the home became "overwhelming" to the officers. *Id.* at 71. A smokey odor also was evident.

[5] Detective De Leon began questioning Nance about the vehicle parked in front of his home. Based on the marijuana smell, Sergeant Kessie asked Nance to step outside. Nance did not respond but looked over his shoulder. The officers could hear movement and other noises coming from inside the home. Sergeant Kessie opened the storm door fully and grabbed Nance's left wrist as Nance stood in the threshold. Nance stiffened and started to struggle, prompting the officers to pull him from "the threshold of the doorway" to the outside of the house to handcuff him. *Id.* at 89.

[6] Sergeant Kessie and other uniformed officers who had participated in the compliance check next door entered Nance's home and briefly searched it. They saw in plain view a vacuum sealer on the kitchen counter, an AR-style rifle just underneath a bed in the front bedroom, a Taurus gun box in another

bedroom, and a large hydraulic press in the garage. A raw marijuana odor was present throughout the home. The officers found no one else in the home. They determined that the noise and movement they had heard earlier came from a television and a dog caged in a bedroom near the front door.

[7] Based on the marijuana smell and the items in plain sight, Detective De Leon obtained a warrant to search the home. The search revealed loose raw marijuana on a game box in the living room, a jar with raw marijuana in a bag in a bedroom closet, a kilo mold in the kitchen closet, items used to dilute narcotics, two UPS packages containing methamphetamine, and a locked case in a closet. After a second search warrant was obtained, the locked case was opened, revealing, among other things, 10 pounds of methamphetamine, two ounces of marijuana, two grams of cocaine, $23,470 in cash, three cell phones, and digital scales.

[8] The State charged Nance with Level 2 felony dealing in methamphetamine. Nance moved to suppress the evidence obtained during the searches of his home. He argued that the officers' detention of him and warrantless search of his home were illegal so the officers' observations during the initial search could not support issuance of the two warrants. The trial court denied Nance's multiple motions to suppress, finding the detention and searches lawful under both the Fourth Amendment to the United States Constitution and Article 1, § 11 of the Indiana Constitution.

The trial court granted Nance's request to certify this case for interlocutory appeal, and we accepted jurisdiction.

## Discussion and Decision

Nance contends the officers' actions took an unconstitutional turn and violated both the Fourth Amendment and Article 1, § 11 of the Indiana Constitution as soon as they grabbed him and yanked him out of his home. The officers continued on this unconstitutional path, according to Nance, by conducting an illegal protective sweep of his home and then seeking warrants based on the information they had illegally obtained through that search. Nance argues that all the evidence collected by the officers after they detained him was tainted by these constitutional violations and should be suppressed.

When reviewing the denial of a motion to suppress in an interlocutory appeal, our approach likens that in sufficiency of the evidence claims. We deferentially review the trial court's ruling, construing conflicting evidence in the manner most favorable to the ruling. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). We "consider any substantial and uncontested evidence favorable to the defendant" but do not reweigh the evidence or judge witness credibility. *Id.* Any constitutional issues are reviewed de novo. *Campos v. State,* 885 N.E.2d 590, 596 (Ind. 2008).

## I. Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const., amend. IV. The parties agree that the officers' initial approach of Nance's home and initial questioning of him did not implicate the Fourth Amendment. *See Florida v. Jardines*, 569 U.S. 1, 8 (2013) (ruling that "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do'" (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)); *Warren v. State*, 73 N.E.3d 203, 207 (Ind. Ct. App. 2017) (ruling that a knock and talk was legitimate police business and thus did not constitute a search for Fourth Amendment purposes).

[13] The parties diverge, however, as to the legality of the officers' actions once Sergeant Kessie opened Nance's door wider and grabbed Nance. We conclude that the Fourth Amendment did not authorize Nance's detention or any of the searches of his home that followed.

## A. Detention

[14] Nance contends the officers first overstepped Fourth Amendment boundaries when they crossed the threshold of his home to detain him. In response, the State first claims the detention occurred without entry into the home. Even if the officers did enter the home to accomplish the detention, the State argues that they were justified by the strong smell of marijuana to which they were exposed when Nance opened his front door. The State essentially contends the "knock and talk" turned into an investigatory stop during which Nance's detention was justified. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968) (ruling that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer

has a reasonable suspicion that criminal activity "may be afoot"). Finally, the State claims that the officers had probable cause to arrest Nance based on the smell of marijuana in his home and that exigent circumstances justified their entry into Nance's home to arrest him.

[15] We find the threshold was crossed. *Terry* therefore does not apply. We also conclude that the State has failed to prove that the marijuana smell flowing from Nance's home, standing alone, created probable cause to arrest Nance or exigent circumstances that would justify the warrantless entry.

### i. Threshold

[16] The record refutes the State's claim that the officers did not cross the threshold of Nance's home. Sergeant Kessie testified that Nance "cracked the [storm] door just a little bit," remaining behind it. Tr. Vol. II, p. 87. Sergeant Kessie then testified that he opened the storm door wider, grabbed Nance, and "*pulled him out of the threshold of the doorway*" before handcuffing Nance and detaining him outside. *Id.* at 89 (emphasis added). Thus, Sergeant Kessie necessarily crossed the outer boundary of the home's threshold to grab Nance and pull him from the home.

[17] The State claims that even if the officers crossed the threshold to detain Nance, their warrantless entry to accomplish the detention did not run awry of the Fourth Amendment. Relying on *United States v. Santana*, 427 U.S. 38, 42 (1976) and *United States v. Berkowitz*, 927 F.2d 1376, 1386-87 (7th Cir. 1991), the State argues that a person standing in the threshold of his home is outside, rather

than inside, the home for Fourth Amendment purposes. Under this reasoning, the person in the threshold has knowingly exposed himself to "public view, speech, hearing, and touch" just as if he were standing in a public place, according to the State. Appellee's Br., p. 20 (quoting *Santana*, 427 U.S. at 42).

[18] But *Santana* involved a home with an open door through which police with probable cause entered to arrest a person, who at first was standing in the doorway when police arrived and then retreated into the vestibule. 427 U.S. at 40. The *Santana* Court found exigent circumstances justified the entry because the officers entered the home "in hot pursuit" of the person for whom they had probable cause to arrest. *Id.* at 42-43. By contrast, Nance was inside his home when police arrived and only appeared in the threshold due to the officers' knocking. Nance only "cracked" the outer storm door to talk to the officers, and, unlike Santana, no "hot pursuit" was involved.

[19] The State offers no basis for finding that the officers had probable cause to arrest Nance when the officers opened the storm door wider and crossed the threshold to seize him. Tr. Vol. II, p. 87. Officer De Leon stated that the officers merely suspected marijuana was in the home due to the burnt and raw marijuana odors. The smell of raw marijuana, as detected here by experienced and trained officers, may establish a substantial basis for probable cause for a search warrant. *Bunnell v. State*, 172 N.E.3d 1231, 1236-37 (Ind. 2021). The smell of marijuana also may generate probable cause in other contexts. *See, e.g., Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013) (marijuana smell in a vehicle detected by a trained officer may generate probable cause to search at least the

vehicle's passenger compartment); *Bell v. State*, 13 N.E.3d 543, 546 (Ind. Ct. App. 2014) (smell of raw or burnt marijuana on a person provides probable cause to arrest that person for possession of marijuana).

[20] But the State cites no authority showing that the smell of marijuana not emanating from a person is sufficient, by itself, to establish probable cause for a warrantless home entry to detain or even arrest him. At most, the officers had: (1) reasonable suspicion to believe Nance possessed the marijuana that the officers believed was in the home; and (2) probable cause for a warrant to search the home. *See Bunnell*, 172 N.E.3d at 1236-37.

[21] Given these important distinctions—that is, probable cause and hot pursuit in *Santana* versus mere reasonable suspicion and a knock and talk here—*Santana* does not require a finding that Nance lost his Fourth Amendment rights by standing in the threshold of his home after answering the officers' knocks. *See Stanton v. Sims*, 571 U.S. 3, 8 (2013) (*per curiam*) (treating *Santana* as mainly governing "hot pursuit" of a felon); *Cox v. State*, 696 N.E.2d 853, 857-58 (Ind. 1998) (suggesting, but not explicitly deciding, that where the suspect is only at the threshold to answer police knocking at the door, *Santana* does not dictate that the threshold is a public place to which Fourth Amendment protections do not apply).

[22] *Berkowitz* also does not advance the State's argument. In *Berkowitz*, the United States Court of Appeals for the Seventh Circuit approved a slight, warrantless entry into a home to complete an arrest announced outside the home when the

individual acquiesced and the door was open. 927 F.2d at 1386-87. But, here, the State has not established that the officers had probable cause to arrest Nance or that the officers announced the arrest before entering to accomplish that arrest. And most notably, Nance did not acquiesce in any detention, and the outer door to his home was only slightly open.

[23] Not only is *Berkowitz* factually distinct, but it eviscerates the State's argument that officers may cross the threshold of a home without consent to accomplish a *Terry*-style detention. The Seventh Circuit ruled:

> [I]t would not have violated the Fourth Amendment for [the police] to enter Berkowitz's house after announcing the arrest, and remain near his door, to take Berkowitz under their control.
>
> It is a different matter, however, for the police to enter a person's home, without his consent, before announcing their authority to arrest. In that case, the arrestee has not forfeited his privacy interest in the home; he has not relinquished his right to close the door on the unwanted visitors . . . . *Payton* [*v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)] holds that police may not enter a person's home without a warrant to arrest him ...
>
> *Santana* does not require a different result. As far as reasonable privacy expectations go, there is a significant difference between a person who for no reason voluntarily decides to stand in his open doorway, and a person who merely answers a knock on his door. The person who answers the knock and stays within the house is not voluntarily exposing himself "to public view, speech, hearing, and touch as if [he is] standing completely outside [his] house." *Santana*, 427 U.S. at 42, 96 S.Ct. at 2409.

*Id.* at 1387-88.

### ii. Terry

Given that the officers crossed the threshold of Nance's home, the State's reliance on *Terry* also is unhelpful. The Fourth Amendment generally requires police to obtain a warrant supported by probable cause before entering a home for a search or seizure without permission. *Riley v. California*, 573 U.S. 373, 382 (2014); *see also Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). This is because the physical entry of the home is the "chief evil" to which the Fourth Amendment is directed. *Payton*, 445 U.S. at 585 (internal quotations omitted). In other words, "the Fourth Amendment has drawn a firm line at the entrance to the house" because it places "[t]he home as first among equals." *Id.* at 590; *Jardines*, 569 U.S. at 6.

Accordingly, warrantless searches and seizures inside a home are presumptively unreasonable under the Fourth Amendment. *King*, 563 U.S. at 459. This presumption sometimes may be overcome, however, because "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Id.* (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). The warrant requirement therefore is subject to certain reasonable exceptions where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin*, 483 U.S. at 873 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in judgment)). One of these exceptions occurs when police have probable cause to arrest a person and exigent circumstances exist. *Payton*, 445 U.S. at 587-88. When either probable cause or exigent circumstances is missing from a non-consensual

warrantless home entry, however, the threshold cannot reasonably be crossed by police. *Id.* at 590, 602.

[26] A *Terry* stop provides no exception to these rules requiring: (1) consent to entry; (2) a warrant supported by probable cause; or (3) in the absence of a warrant, a combination of probable cause and exigent circumstances. Although a warrant is never required for a *Terry* stop, neither is probable cause. A *Terry* stop is authorized based only on reasonable suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 30. Given this lesser standard of proof, reasonable suspicion may justify an officer's approach of a home to question its occupants but will not justify a warrantless entry into the home. *Arizona v. Hicks*, 480 U.S. 321, 328 (1987) ("A dwelling-place search, not less than a dwelling-place seizure, requires probable cause."); *United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir. 1991) ("Reasonable suspicion cannot justify a warrantless search of a house.").

[27] We agree with Nance that this was a rogue knock and talk, rather than, as the State claims, a knock and talk turned investigatory stop authorized by *Terry*. *See Hayes v. State*, 794 N.E.2d 492, 496-97 (Ind. Ct. App. 2003) (noting that a knock and talk "pushes the envelope" and may be misused so as to violate the Fourth Amendment). Nance had the right to decline to answer the officers' questions during the knock and talk and to refuse to step outside his home. *See Jean-Baptiste v. State*, 71 N.E.3d 406, 408, 411 (Ind. Ct. App. 2017) (reversing conviction for resisting law enforcement because officer seeking to serve civil arrest warrant at defendant's home "was not lawfully engaged in the exercise of his duties when he reached across the threshold of [defendant's] residence

without permission or legal justification and grabbed" defendant; defendant had refused to comply with the officer's request to turn around and place his hands behind his back), *summarily affm'd in relevant part*, 82 N.E.3d 878 (Ind. 2017).

[28]    This is so because "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion" stands at the Fourth Amendment's "very core." *Lange v. California*, 141 S. Ct. 2011, 2018 (2021) (quoting *Collins v. Virginia*, 138 S. Ct. 1668, 1670 (2018)). As the United States Supreme Court explained:

> When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. When the police knock on a door but the occupants choose not to respond or to speak, "the investigation will have reached a conspicuously low point," and the occupants "will have the kind of warning that even the most elaborate security system cannot provide." And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time.

*King*, 563 U.S. at 469-70 (internal citations omitted). Thus, by opening his door to answer a knock, Nance neither abandoned his privacy interest in his home nor invited the officers knocking to enter. *Berkowitz*, 927 F.2d at 1387.

### iii. Probable Cause to Arrest

The State also contends the Fourth Amendment authorized the officers' crossing of the threshold because they had probable cause to arrest Nance based solely on the marijuana smell. As we noted, the Fourth Amendment prohibits warrantless arrests in the home absent consent to enter or a combination of probable cause to arrest and exigent circumstances. *Payton*, 445 U.S. at 588-90. In advancing this claim that probable cause to arrest Nance existed, the State relies solely on *Bell v. State,* 13 N.E.3d 543, 546 (Ind. Ct. App. 2014).

In *Bell*, this Court found probable cause to arrest the defendant, as well as search the defendant incident to that arrest, based on a marijuana smell flowing from *both* the defendant and her vehicle. 13 N.E.3d at 544. Here, there is no evidence that the officers detected a marijuana smell on Nance. The State cites no authority that would support a finding that the officers had probable cause to arrest Nance simply because his home smelled of marijuana. Without probable cause to arrest Nance, the officers violated the Fourth Amendment by crossing the threshold to detain or even arrest him. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("As *Payton* made plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry in a home."); *Payton*, 445 U.S. at 590.

### iv. Exigent Circumstances

Even if the officers had probable cause to arrest Nance, they lacked the other ingredient necessary to justify the first warrantless entry into Nance's home:

exigent circumstances. *See id.* at 589 (requiring exigent circumstances to justify law enforcement's entry into a home without a warrant or consent). The State claims exigent circumstances existed because any marijuana within Nance's home likely would have been removed or disposed of before the officers obtained a warrant. The imminent destruction of evidence is a recognized exigent circumstance. *King*, 563 U.S. at 460. The government has the burden to establish "exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *McDermott v. State*, 877 N.E.2d 467, 474 (Ind. Ct. App. 2007).

[32] We agree with Nance that the State failed to show exigent circumstances. In determining whether the exigent circumstances exception to the warrant requirement applies, courts review the totality of the circumstances to determine whether police "faced an emergency that justified acting without a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013). The State argues an emergency existed because Nance looked backward over his shoulder, the officers heard noise and shuffling or movement from within the home, and any marijuana was easily disposable. We are unpersuaded.

[33] The exigent circumstances exception to the warrant requirement requires circumstances presenting a "compelling need for official action and no time to secure a warrant." *Id.* at 149 (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). Whether exigent circumstances exist is "case-specific." *Lange*, 141 S. Ct. at 2018. In other words, "[w]hether a 'now or never situation' actually exists—whether an officer has 'no time to secure a warrant'—depends upon

facts on the ground." *Id.* (quoting *Riley*, 573 U.S. at 391 and *McNeely*, 569 U.S. at 149).

[34] Where, as here, a minor offense and no flight are involved, the kind of emergency that can justify a warrantless home entry seldom exists. *Lange,* 141 S. Ct. at 2020; *see* Ind. Code § 35-48-4-11(a) (classifying as a Class B misdemeanor possession of less than 30 grams of marijuana absent enhancing circumstances). The United States Supreme Court has therefore cautioned that "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed." *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

[35] So far, however, the United States Supreme Court has not directly addressed whether the smell of marijuana alone can justify a warrantless home entry based on concerns that evidence within would be destroyed before a warrant could be obtained. In *King*, the Court sidestepped whether concerns over the imminent destruction of evidence justified a warrantless entry into a home from which the smell of marijuana was emanating. 563 U.S. at 470-72. Although the *King* Court recognized generally that exigent circumstances could exist in such a scenario, the Court remanded to the Kentucky courts for a determination of whether they existed under the particular facts of that case. *Id.* at 472. The Kentucky Supreme Court ultimately found the State had proved no exigent circumstances. *King v. Commonwealth*, 386 S.W.3d 119, 122-23 (Ky. 2012) (finding the State, by only producing evidence that the officer heard movements

within a home after smelling marijuana emanating from it, did not establish the exigent circumstance of imminent destruction of evidence). Similarly, the U.S. Supreme Court in *Lange* recognized that exigent circumstances may justify warrantless entry into a home based on a suspected misdemeanant's flight but remanded for the exigent circumstances determination. 141 S. Ct. at 2024-25.

[36] But other United States Supreme Court decisions in drug cases are helpful to our analysis. In *Johnson v. United States*, 333 U.S. 10, 15 (1948), the Court found that the dissipation of opium fumes resulting from the delay in obtaining a search warrant for the hotel room in which the fumes were present—together with movement within the hotel room after police announced themselves but before the room's door was opened—was not a sufficient exigency to support the officers' warrantless entry. Although *Johnson* was decided 75 years ago, it remains a stalwart of modern Fourth Amendment analysis. *See District of Columbia v. Wesby,* 138 S. Ct. 577, 586 n.5 (2018) (relying on *Johnson* in analyzing whether probable cause to arrest existed); *Riley,* 573 U.S. at 383 (quoting *Johnson* on question of warrantless search).

[37] In *Welsh*, 466 U.S. at 754, the Court ruled exigent circumstances—the imminent destruction of evidence in the form of declining blood alcohol levels in the drunk driving suspect's body—did not justify a warrantless entry into the suspect's home, given that the suspected crime was merely a civil traffic offense in that state. The Court observed that "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Id.* at 753.

[38] In *Illinois v. McArthur*, 531 U.S. 326, 336-37 (2001), the Court determined that no Fourth Amendment violation occurred when law enforcement refused to allow McArthur, who was first detained outside his home, to re-enter the home unless accompanied by an officer while the warrant was sought. The Court found exigent circumstances—that McArthur would destroy marijuana evidence that his wife had reported seeing in the home minutes earlier and that she said belonged to McArthur—justified the warrantless detention. *Id.* Noting that a home search is a greater intrusion than briefly preventing entry to a home, the Court declined to address whether possession of marijuana justified a warrantless home entry. *Id.* at 336 ("Temporarily keeping a person from entering his home, a consequence whenever police stop a person on the street, is considerably less intrusive than police entry into the home itself in order to make a warrantless arrest or conduct a search.").

[39] *Johnson* and *Welsh* point toward a finding of no exigent circumstances here. *McArthur*, which did not involve a warrantless home entry, does little or no damage to such a conclusion. But unlike the United States Supreme Court, various United States Courts of Appeals have directly addressed the question of exigent circumstances in the context of a warrantless home entry based on a marijuana smell. The results have been mixed.

[40] For instance, the Seventh Circuit has ruled that the smell of burning marijuana outside a home, without more, does not create an exigency permitting a warrantless entry into a home. *White v. Stanley*, 745 F.3d 237, 241 (7th Cir. 2014). The Tenth Circuit found that "if marijuana possession is the only crime

for which the officers in this case had probable cause, the exigency exception for destruction of evidence should not apply because marijuana possession is not a serious crime." *United States v. Mongold*, 528 Fed.Appx. 944, 950 (10th Cir. 2013).

[41] The Third Circuit found that the imminent destruction of evidence justified a warrantless entry into an apartment when a marijuana smell was in the building's hallway and increased when the apartment door was opened. *United States v. McMillion*, 472 Fed.Appx. 138, 141 (3d Cir. 2012). But one of the important factors in *McMillion* was the defendant's admission to smoking marijuana. *Id.* ("It was thus reasonable for the officers to suspect that there was ongoing drug activity, and, particularly in light of McMillion's admission to smoking marijuana, it was also reasonable for the officers to conclude that contraband was being destroyed and would continue to be destroyed or removed if they did not act immediately.").

[42] And in *United States v. Grissett*, the Fourth Circuit found the imminent destruction of evidence justified a warrantless intrusion into a hotel room occupied by three people when officers smelled a marijuana odor coming from the room. 925 F.2d 776, 778 (4th Cir. 1991) ("Since the police had identified themselves before smelling the marijuana, an officer could reasonably conclude that the occupants of the room would attempt to dispose of the evidence before the police could return with a warrant."); *see United States v. Nerber*, 222 F.3d 597, 600 n.2 (9th Cir. 2000) ("For Fourth Amendment purposes, a hotel room

is treated essentially the same, if not exactly the same, as a home.") (citing *Stoner v. California*, 376 U.S. 483, 490 (1964)).

[43] Like our federal counterparts, this Court also has considered exigent circumstances in the context of a warrantless home entry based on the smell of marijuana. In *Ware v. State*, 782 N.E.2d 478, 483 (Ind. Ct. App. 2003), we rejected the State's claim that exigent circumstances—specifically, the imminent destruction of evidence—authorized an officer's warrantless entry into an apartment from which a marijuana smell was emanating. We reasoned:

> Officer Carpenter did not hear Ware yell to anyone inside the apartment that the police were there. In fact, when Ware opened the door, Officer Carpenter did not see anyone else inside the apartment or any drugs in plain view. Additionally, Ware cooperated with Officer Carpenter the entire time and returned to the door with his identification after his initial encounter with Officer Carpenter. Although Ware was gone for approximately three minutes before returning with his identification, during that time period Officer Carpenter did not hear Ware running through the apartment; rather, he just heard Ware "walking around." Furthermore, Officer Carpenter did not hear any toilets flushing or anything else indicative of the destruction of the marijuana.

*Id.*

[44] Here, unlike the police in *Ware*, the officers' initial entry into Nance's home was to detain Nance for purposes of an investigation based on reasonable suspicion of criminal conduct, not because the officers had probable cause to believe Nance had committed a crime. Officer Kessie specifically testified that when he pulled Nance from the doorway, "[Nance] was not under arrest. He

was detained for further investigation." Tr. Vol. II, p. 89. The officers suspected someone in the home had either smoked marijuana or possessed it or both, but they did not know who. The officers never testified that the marijuana smell came from Nance individually, and they never asked Nance whether anyone else was in the home.

[45] Given these particular facts, and with the guidance of *Ware*, we conclude the State failed to prove that the Fourth Amendment authorized the officers' initial warrantless entry into Nance's home to detain him. Given that the officers only had reasonable suspicion that Nance might possess marijuana and no exigent circumstances existed, their breach of the threshold of his home violated the Fourth Amendment.

## B. Protective Sweep

[46] Nance argues the officers' second warrantless entry into his home also violated the Fourth Amendment because it stemmed from his illegal detention by the officers. Classifying this second entry as a protective sweep, the State asserts that the entry and search was justified by Nance's "arrest" and the need to prevent the imminent destruction of evidence. We conclude that the State proved no valid exception to the warrant requirement justifying this second warrantless entry into Nance's home.

### i. No "Protective Sweep"

[47] The State improperly classifies the officers' second entry into Nance's home as a "protective sweep." In *Maryland v. Buie*, 494 U.S. 325, 334 (1990), the United

States Supreme Court ruled that incident to an arrest, police may, as a precautionary measure and without probable cause or reasonable suspicion, conduct a brief search of areas immediately adjoining the place of arrest from which an attack could be immediately launched.

[48] The State repeats its claim that the officers had probable cause to arrest Nance for possession of marijuana. Under the State's reasoning, the officers' failure to arrest Nance is irrelevant because the officers had authority to do so. We have already rejected the State's assertion that the officers had probable cause for Nance's arrest before they entered his home. Because *Buie* defined a protective sweep as incident to arrest and the State has failed to establish any arrest (or even a right to arrest), the officers' second entry into the home cannot be justified as a "protective sweep."

### ii. *Probable Cause and Exigent Circumstances*

[49] Although the officers lacked probable cause to believe that Nance possessed marijuana, they arguably did have probable cause to believe Nance's home contained evidence of criminal conduct. *See Bunnell*, 172 N.E.3d at 1235; *see Johnson,* 333 U.S. at 13 (finding the "presence of odors" may establish probable cause for a search warrant if two conditions are met: (1) the issuing judicial officer "finds the affiant qualified to know the odor;" and (2) the odor "is one sufficiently distinctive to identify a forbidden substance").

[50] But as we noted earlier, probable cause alone is not enough to justify a warrantless search of a home. It must be joined with exigent circumstances to

dispense with the warrant requirement. *Cudworth v. State,* 818 N.E.2d 133, 137-38 (Ind. Ct. App. 2004). Therefore, if we ignore for purposes of this analysis any impact from the first warrantless entry, the legality of the second warrantless entry rests on the existence of exigent circumstances. *See id.*

[51] We have already rejected the State's claim that the imminent destruction of evidence justified the officers' initial warrantless entry. That analysis equally applies to this second entry, given that the circumstances facing the officers had not changed in the short time between the officers' detention of Nance and their search of the home. The State has therefore failed to establish that imminent destruction of evidence justified their second warrantless entry. For all of these reasons, we conclude that the second warrantless entry, like the first, violated the Fourth Amendment.

## C. Searches Under Warrant

[52] Nance argues that the officers obtained their first search warrant based on the evidence collected during their illegal warrantless search of his home. Accordingly, he claims "[a]ny evidence recovered as a result of the subsequently issued search warrant was fruit of the poisonous tree and should have been suppressed." Appellant's Br., p. 22. The State, on the other hand, asserts that probable cause to issue the warrant existed even if the observations made during the warrantless search are excluded from the search warrant affidavit. In essence, the State argues that the warrantless detention and search did not taint the search warrant or the later home search that it authorized.

"Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion." *Segura v. United States*, 468 U.S. 796, 804 (1984). Evidence or information obtained through illegal tactics violating constitutional rights also cannot be used to establish probable cause for a search warrant. *State v. Felker*, 819 N.E.2d 870, 873-74 (Ind. Ct. App. 2004).

But additional inquiry is necessary when the search warrant affidavit mixes legally and illegally secured information and the defendant claims that evidence subsequently seized is tainted. *See Segura*, 468 U.S. at 804-5. The reviewing court must determine whether the challenged evidence was obtained by exploitation of the initial illegality or, instead, "by means sufficiently distinguishable to be purged of the primary taint." *Id.* (quoting *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). The language in both the search warrant affidavit and warrant are relevant to this determination. *See, e.g., Esquerdo v. State*, 640 N.E.2d 1023, 1030 (Ind. 1994).

The search warrant affidavit here included information obtained during the illegal warrantless search of Nance's home, as well as statements by Nance to police that ultimately were suppressed by the trial court due to other police misconduct. For instance, the affidavit noted that the officers observed during the warrantless search a vacuum sealer, drug press, a rifle, and a gun box. Exhs. Vol. I, pp. 9-10. The affidavit sought a warrant authorizing the officers to search for "[f]irearms and ammunition," among other things. *Id.* at 11-12. The trial court issued the warrant as requested. *Id.* at 11-12.

[56] The only firearm evidence known to the officers arose from their observations during the illegal warrantless search of Nance's home. A reasonable conclusion, which the State does not dispel, is that the trial court relied on the illegally obtained evidence when it issued the warrant authorizing the officers to search not only for marijuana but also for firearms and ammunition at Nance's home. Therefore, the evidence on which the officers relied in establishing probable cause—and on which the trial court based its finding of probable cause for the warrant—was obtained by exploitation of the prior illegal entry into Nance's home and not by means distinguishable enough to be purged of the primary taint.[1]

[57] And if the first search warrant was tainted, so too was the second search warrant, which was based entirely on evidence arising from the prior illegal searches. As the warrants were tainted by the police misconduct, the trial court erred in denying Nance's motion to suppress on Fourth Amendment grounds.[2]

---

[1] We observe that the officers may have been able to obtain a search warrant without entering the home if they had not resorted to illegal tactics. *See Bunnell v. State*, 172 N.E.3d 1231, 1237-38 (Ind. 2021) (ruling that officers "who affirm[] that they detect the odor of raw marijuana based on their training and experience may establish probable cause without providing further details on their qualifications to recognize this odor").

[2] Notably, this result is consistent with the purpose of the exclusionary rule: to deter Fourth Amendment violations. *Davis v. United States*, 564 U.S. 229, 236-37 (2011). Here, the officers committed serial misconduct. In addition to the two illegal warrantless entries into Nance's home, they also illegally questioned Nance after he repeatedly asserted his right to counsel, leading the trial court to suppress evidence of his statements. "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the results costs" of exclusion. *Id.* at 238 (quotations omitted). That is the situation presented here.

## II. Article 1, Section 11

[58] Nance also contends his detention and the later searches of his home violated Article 1, § 11 of the Indiana Constitution. "Although Indiana's § 11 and the Federal Fourth Amendment are textually identical, they are analytically distinct." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). The Fourth Amendment "focus[es] on the defendant's reasonable expectation of privacy." *Duran v. State*, 930 N.E.2d 10, 17 (Ind. 2010) (internal quotations omitted). Article 1, § 11, however, "employ[s] a totality-of-the-circumstances test to evaluate the reasonableness of the officer's actions." *Id.*

[59] Generally, a warrantless search violates the Indiana Constitution unless the search is reasonable under the totality of the circumstances. *Isley v. State*, 202 N.E.3d 1124, 1131 (Ind. Ct. App. 2023). We consider three non-exhaustive factors when determining the reasonableness of the officers' actions under the Indiana Constitution: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[60] "When weighing these [*Litchfield*] factors as part of our totality-of-the-circumstances test, we consider the full context in which the search or seizure occurs." *Hardin v. State*, 148 N.E.3d 932, 943 (Ind. 2020). Therefore, "we examine, at different points in our analysis, the perspectives of both the officer

and the person subjected to the search or seizure." *Id.* The State bears the burden of showing the intrusions were reasonable. *Carpenter,* 18 N.E.3d at 1002.

## A. Degree of Suspicion

The degree of suspicion that marijuana was within Nance's home was high, but the degree of suspicion that Nance possessed the marijuana was somewhat less so. When considering this factor, "courts consider 'the reasonableness of the officers' assumptions, suspicions, or beliefs based on the information available to them at the time.'" *Berry v. State*, 121 N.E.3d 633, 638 (Ind. Ct. App. 2019) (quoting *Duran*, 930 N.E.2d at 18). We consider all the information available to the officers at the time of the search or seizure. *Hardin*, 148 N.E.3d at 943.

Multiple officers smelled a strong odor of burning and raw marijuana that strengthened as they neared Nance's front door. When Nance opened the door to the officers, those officers determined the smell was emanating from inside the home. Raw marijuana, which remains illegal in Indiana, has an unmistakable odor unique to that drug. *Bunnell*, 172 N.E.3d at 1236; *see* Ind. Code § 35-48-4-11. The smell of marijuana in its raw form, as detected by experienced and trained officers, can establish probable cause for a search warrant. *Bunnell*, 172 N.E.3d at 1235 (citing *Johnson*, 333 U.S. at 13). The officers' belief that marijuana was within the home and that Nance might be the person possessing it was reasonable under these circumstances.

## B. Degree of Intrusion

The degree of intrusion was also high. As "[h]ouses and premises of citizens receive the highest protection[,]" warrantless searches of a home are presumptively unreasonable. *Carpenter*, 18 N.E.3d at 1002 (quoting *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994)). We evaluate the degree of intrusion from the defendant's point of view, considering "the intrusion into both a defendant's physical movements and privacy" with a focus on how the officers conducted the search or seizure. *Ramirez v. State*, 174 N.E.3d 181, 192 (Ind. 2021). But in examining the search or seizure method, "we continue to consider the totality of the circumstances and look at 'all of the attendant circumstances'—not a single aspect of the search or seizure in isolation." *Hardin*, 148 N.E.3d at 945 (quoting *Garcia v. State*, 47 N.E.3d 1196, 1202 (Ind. 2016)).

The knock and talk at Nance's home was minimally intrusive at its inception. But it became highly intrusive when police lacking probable cause and exigent circumstances *pulled Nance from his home* and expanded the encounter into a handcuffing, a detention, and, ultimately, an arrest. *See Govan v. State*, 116 N.E.3d 1165, 1175 (Ind. Ct. App. 2019) ("[T]here are few intrusions more severe than an arrest."); *Carpenter*, 18 N.E.3d at 1002 (finding officers' warrantless entry into home through open door was "highly intrusive").

The alleged "protective sweep" that followed also was highly intrusive. A true protective sweep, standing alone, generally is minimally intrusive if it is legal,

limited to areas of the home where a person reasonably could hide, and lasts only a few minutes. *See*, *e.g., Weddle v. State*, 989 N.E.2d 371, 378-79 (Ind. Ct. App. 2013). But the search here does not fall in that category. Instead, it evolved from a detention accomplished through a warrantless entry into Nance's home without probable cause or exigent circumstances. And the evidence obtained through the two warrantless and highly intrusive entries was used to obtain the warrants for the later searches.

## C. Law Enforcement Needs

[66] The extent of law enforcement needs was minimal. To be sure, police have a strong need to investigate criminal activity, including drug offenses. *Corbett v. State*, 179 N.E.3d 475, 487 (Ind. Ct. App. 2021), *trans. denied*; *Austin v. State*, 997 N.E.2d 1027, 1036 (Ind. Ct. App. 2013) (observing that law enforcement's need to disrupt the illegal drug trade is significant). The officers reasonably suspected criminal activity based on the smell of raw and burning marijuana. They determined the smell was emanating from Nance's home when he opened his front door.

[67] That said, this strong need to investigate is tempered by the minor nature of the offense that the officers were investigating. Police had no evidence of any offense other than possible marijuana possession when they first entered Nance's home to detain him. Possession of marijuana without enhancing circumstances is a Class B misdemeanor—one of the more minor offenses in the Indiana criminal code. *See* Ind. Code § 35-48-4-11(a). And the officers' warrantless entry was unnecessary because they likely could have obtained a

warrant to search the home based solely on the smell of marijuana before they ever knocked on Nance's door. *See Bunnell*, 172 N.E.3d 1236-37.

## D. Balancing *Litchfield* Factors

[68] Balancing these three *Litchfield* factors and considering the full context in which the search and seizure occurred, *see Hardin*, 148 N.E.3d at 943, we conclude that the State failed to establish the multiple searches of Nance's home and his detention were reasonable under Article 1, § 11. The officers, lacking both a warrant and probable cause to believe Nance had committed a crime, seized Nance by pulling him from the threshold of his home after he failed to follow Sergeant Kessie's directive to step outside his home. The marijuana offense that they reasonably suspected was minor.

[69] From that unreasonable seizure of Nance flowed further unreasonable police conduct: the officers' continued questioning of Nance after he invoked his right to counsel and a second warrantless entry into Nance's home that we have already determined violated the Fourth Amendment. The searches conducted under the warrants were no less unreasonable, given that they were based in substantial part on observations made during the earlier warrantless searches. *See Mundy v. State*, 21 N.E.3d 114, 121 (Ind. Ct. App. 2014) (noting that evidence derived through use of information obtained in an unlawful search or seizure is inadmissible).

## Conclusion

[70]     As all of the challenged searches and seizures violate both the Fourth Amendment and Article 1, § 11, we reverse the trial court's denial of Nance's motion to suppress and remand for further proceedings consistent with this opinion.

Bailey, J., and Brown, J., concur.